*Unifund CCR LLC v. Cobb,* No. 166-4-14 Wmcv (Wesley, J., April 11, 2017).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

SUPERIOR COURT                                      CIVIL DIVISION

Windham Unit                                        Docket No. 166-4-14 Wmcv

| | |
|---|---|
| Unifund CCR LLC,<br><br>　　　Plaintiff<br><br>　　　v.<br><br>Lindsay Cobb,<br><br>　　　Defendant | |

### Opinion & Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment.

### I.      Introduction

This is a collections case involving a debt buyer, Unifund, appellant in *Unifund CCR Partners v. Zimmer*, 2016 VT 33, which also originated in this Court. As in *Zimmer*, here Unifund has alleged that a Defendant has failed to pay his Citibank consumer credit card debt in breach of his contract with Citibank and that Unifund now has the right to collect this debt. Defendant's debt purportedly had been transferred to two other intermediary debt buyers, Pilot Receivables Management, LLC ("Pilot") and Distressed Asset Portfolio IV, LLC ("DAP") before Unifund obtained the right to collect it. Unifund also claims that Mr. Cobb has been unjustly enriched by not having to pay his credit card debt. Unifund seeks judgment for the debt, costs, fees, and prejudgment interest.

Plaintiff first moved for summary judgment in a motion largely based upon Defendant's alleged failure to timely respond to requests for admission. This Court denied that motion and set the case for trial. In the meantime, *Zimmer* went to trial and then went up on appeal while the Court stayed this case, based on similarities as to certain issues presented by the two cases. In *Zimmer*, after a trial on the merits, this Court made five holdings:

1) The designated records custodians that Unifund called to testify did not establish sufficient foundation to introduce the documents purported to be assignments of rights transferring the debt from Citibank to each subsequent debt holder under Vermont Rule of Evidence 803(6), and without admission of these documents, Unifund could not prove its right to sue on the debt.

2) Even if the assignments had been admitted, the assignment to Unifund purported to transfer an interest in "Receivables" for debt collection purposes while simultaneously retaining "title and ownership" of the same debt in the assignor. Because the Court could not interpret whether such contradictory language was intended to adhere debt collection rights in assignor or assignee, the assignment was void.

3) The purported credit card contract between Citibank and Mr. Zimmer was unenforceable because material terms were indefinite.

4) The purported contract between Citibank and Mr. Zimmer really involved Mr. Zimmer's father, Charles, who had applied for the card in his son's name and was largely responsible for the charges incurred.

5) The unjust enrichment claim did not survive scrutiny at trial, given the evidence that most of the charges to the card were made by Mr. Zimmer's father and because the claim was based entirely on the purported breach of contract claim.

*Unifund CCR LLC v. Zimmer*, No. 514-11-13 Wmcv (Vt. Sup. Ct. Jan. 29, 2014) (Wesley, J.) The Supreme Court affirmed the first and the fifth holdings as sufficient to uphold the trial court's ruling, and declined to address the others. *Unifund*, 2016 VT 33. Except for the uncertainty as to the identity of the actual debtor addressed by the fourth holding in the trial court's decision in *Zimmer*, Defendant here challenges Plaintiff's claim in reliance on each of the other holdings in the trial and appellate rulings.

Defendant has moved for summary judgment arguing in part that Plaintiff lacks standing because the assignment transferring Defendant's debt to Plaintiff contains the same language as the documents in *Zimmer*, which this Court previously held to be uncertain in material terms, and thus void. As discussed below, the Court again resolves this threshold question in favor of Defendant, concluding that defects in the chain of assignment preclude Plaintiff from establishing standing.

## II.     Standard of Review

The Court must grant summary judgment if there is no material dispute of fact and the moving party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). In making this assessment, the Court views the evidence in the light most favorable to the non-moving party giving him or her the benefit of any reasonable doubts. *Samplid Enterprises, Inc. v. First Vermont Bank*, 165 Vt. 22, 25 (1996). The undisputed material facts, characterized in the light most favorable to Unifund, are as follows.

Defendant opened a credit card account with Citibank (South Dakota) N.A. That company transferred ownership of Defendant's account to Citibank, N.A. through a corporate merger.[1] In 2011, Defendant allegedly stopped making payments on his card and Citibank "charged off" his account. A creditor "charges off" a debt when, having not received payment on an account for 180 days or more, and having determined that the debt is unlikely to be collected, creditor stops listing the account as an asset in its accounting documentation for federal banking regulation and tax purposes. Uniform Retail Credit Classification and Account Management Policy, 65 Fed. Reg. 36903-01 (June 12, 2000); See Fed. Trade Comm'n, *The Structure and Practices of the Debt Buying Industry* (2013), at 13, cited in *Zimmer*, 2016 VT 33 at n. 1. Charging off an account does not forgive debtor's obligation to repay the outstanding balance, and frequently creditors sell charged-off debt to third-party debt buyers. See *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1186 (11th Cir. 2010).

---

[1]The Court is satisfied for the purposes of deciding this motion that this merger occurred in or about July 2011 and that it conveyed ownership of credit card accounts previously held by Citibank (South Dakota) N.A. to Citibank N.A. See Affidavit of Fisher at ¶1; Pltf's Ex. A filed July 28, 2016 (SEC Form 8-K for Citibank, N.A., successor in interest to Citibank (South Dakota)). A merger is "the absorption of one organization that ceases to exist into another that retains its own name and identity and acquires the assets and liabilities of the former." *Black's Law Dictionary*, 1009 (2004 8th edition).

Plaintiff alleges that Citibank, N.A. sold Defendant's charged off debt to Pilot. Next Pilot transferred it to DAP. Finally DAP assigned the right to collect the debt to Unifund. Pilot and DAP are "Unifund affiliates" and the three companies, which are all in the debt buying industry, share business records. See Whiting Aff. at ¶¶5–6. All three conveyances took place on June 27, 2013, as described in greater detail below.

First, Douglas C. Morrison, Director of Citibank, N.A., allegedly executed a document entitled Bill of Sale and Assignment. This document states that it transfers "the Accounts described in Exhibit 1 and the final electronic file" to Pilot Receivables Management, LLC. Whiting Aff. Ex. A. The Bill of Sale and Assignment references three other documents which are not currently before the Court: (1) a "Purchase and Sale Agreement" between Citibank and Pilot dated June 25, 2013; (2) "Exhibit 1," and; (3) "the final electronic file." *Id.* Plaintiff represents that it has excerpted and attached to its papers "one line of data" from the "electronic file" related to Defendant's account, which it also refers to as the Original Data Source or ODS. Whiting Aff. Ex. B; Whiting Aff. at ¶¶10-11. This "line of data" contains unique identifying information consistent with Defendant's credit card account with Citibank and Defendant's identity.

On the same day, Morgan J. Smith, Vice President of Pilot Receivables Management, LLC, purportedly signed a Bill of Sale assigning "unencumbered title to the Accounts described on Attachment A and all of [its] rights thereto" to Distressed Asset Portfolio IV, LLC. Whiting Aff. Ex. D. Nothing purporting to be "Attachment A" is included in the documentation before the Court.

Later, still on June 27, 2013, Morgan Smith, who also apparently serves as Vice President of Operations for Distressed Asset Portfolio IV, LLC, allegedly signed an assignment purportedly transferring some of DAP's interest in Defendant's debt to Unifund. Autumn Bloom, Manager of Legal Operations of Unifund also appears to have signed the document. Whiting Aff. Ex. E.

The assignment to Unifund states that it transfers "all of [DAP's] rights in the Receivables, for collection purposes only, including conducting litigation in [Unifund's] name, for those Receivables which [DAP] owns or may acquire from time to time" to Unifund. *Id.* This assignment also purports to retain for DAP "title and ownership of such Receivables." *Id.* Just as with the other instruments in this chain of debt ownership, the assignment from DAP to Unifund references a document to which the Court does not have access: the "Servicing Agreement" between DAP and Unifund. The assignment states that the Servicing Agreement contains definitions of any undefined terms. *Id.*

Unlike Plaintiff's explanation that Defendant's account was included in the batch of accounts conveyed by the Bill of Sale and Assignment from Citibank to Pilot, through the ODS extracted from the "electronic file" or "Exhibit 1" referenced in the transfer instruments, Whiting Aff. at ¶¶10-11, Plaintiff has failed to demonstrate how Defendant's account is tied to the assignment from Pilot to DAP, or from DAP to Unifund.

### III. The Court Grants Defendant's Motion for Summary Judgment.

#### a. Unifund Lacks Standing Because the Assignment from DAP to Unifund Contains Uncertain Material Terms, Rendering it Void.

Defendant argues that the assignment from DAP to Unifund was ineffectual because "title and ownership" of the debt were retained by DAP for the very same debt for which it purported to

3

transfer collection rights.[2] Because of this conflict between the granting clause and the reservation clause, Defendant claims the instrument is void and Unifund does not own Defendant's debt. So, Defendant argues, Plaintiff lacks standing. The same issue came before this Court in *Zimmer*, and this Court held that Unifund lacked a "cognizable interest in the account sufficient to support standing." *Zimmer*, No. 514-11-13 Wmcv (Vt. Sup. Ct. Jan. 29, 2014).

In response, Plaintiff argues that the plain language of the assignment vests the right to collect the debt in Unifund because a debt buyer may bifurcate its various interests in a debt obligation, splitting the obligation into equitable and legal title. Plaintiff cites *Sprint Communications Co., L.P. v. APCC Services, Inc.*, for the proposition that a holder of collection rights may sue on debt that is otherwise owned by someone else. 554 U.S. 269 (2008). In *Sprint* the instrument at issue transferred from creditor to debt collector "for purposes of collection all rights, title and interest of [assignor] in the [assignor's] claims, demands or causes of action…" *Id.* at 272. But here the language in the assignment from DAP to Unifund purports to transfer DAP's "rights for collection purposes" to Unifund while simultaneously retaining "title and ownership" with DAP.

According to the definitions of "title" "ownership" and "rights," terms of art in the practice of law, any instrument that purports to transfer "rights for collection purposes" while reserving "title" and "ownership" is inherently contradictory.

Title and ownership are absolute terms that encompass the entirety of the bundle of rights to a given property. Title is "the union of all elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property." *Black's Law Dictionary*, 1522 (8th edition 2004). Ownership is "the bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others. [It] implies the right to possess a thing, regardless of any actual or constructive control. Ownership rights are general, permanent, and heritable." *Id.* at 1138. Therefore, by retaining title and ownership, DAP held the entirety of the bundle of property rights that make up defendant's debt. Yet DAP also purported to convey all its "right," to collect that debt to Unifund. Right is also an absolute term that means "the interest, claim, or ownership that one has in tangible or intangible property." *Id.* at 1347. Thus, there is an internal struggle within the Assignment from DAP to Unifund over who owns what with respect to Mr. Cobb's debt.

Plaintiff would have the Court resolve this inconsistency by adding the term "equitable" in front of the word "title" in the reservation clause. Plaintiff would then have the Court infer that the assignment conveys legal title to Unifund. But unlike the terms "title," "ownership," and "right," "legal title" and "equitable title," signify qualified interests in property, which is materially different from "title," "ownership" and "rights." Indeed "legal title" is "a title that evidences apparent ownership but does not necessarily signify full and complete title or a beneficial interest." *Id.* at 1523. "Equitable title" is "a title that indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title." *Id.*

Vermont Courts interpret contract provisions to give effect to the intention of the parties as expressed in their written agreement. *Southwick v. City of Rutland*, 2011 VT 53 ¶4, 190 Vt. 106, 109. But even where parties intend to contract, a contract must be reasonably certain as to its material terms, otherwise it is void. Restatement (Second) Contracts §33.

---

[2] This analysis demonstrates that the purported assignment from DAP to Unifund was ineffectual, even assuming Defendant's account could be identified to that assignment; lack of such identification presents a further obstacle to standing discussed in the next section.

Here the words on the page are not "equitable title," or "legal title." Instead the assignment says that "all rights" for collections purposes are conveyed but title and ownership are retained. Any assignment purporting to retain title and ownership of a debt (i.e., the entirety of the bundle of rights that make up the debt), but which also confers a right to collect that debt onto another, seeks to convey to assignee that which it also purports retain for assignor.

Contradictory drafting such as this makes it impossible for the Court, much less Mr. Cobb, to determine who owns his debt. This is untenable. To enforce an assignment so confusingly drafted creates a real risk that debtor could be subjected to multiple collections actions on the same debt, which, as numerous other courts have observed, is an altogether too frequent occurrence in the consumer-debt-buying industry.[3]

**The Court holds that the assignment from DAP to Unifund is void because its material terms—what was to be assigned and what was to be retained—are internally contradictory and therefore uncertain. Therefore, Unifund does not own Mr. Cobb's debt and it lacks standing to sue him in this collections action. Mr. Cobb's motion for summary judgment is hereby GRANTED.[4]**

### b. There is No Admissible Evidence Connecting "Receivables" Purportedly Conveyed in the DAP-to-Unifund Assignment With Mr. Cobb's Debt.

Assuming, *arguendo*, that the language in the assignment from DAP to Unifund bifurcated title, Unifund nonetheless has not established that it owns Defendant's debt. The Assignment from DAP to Unifund says that it conveys "Receivables." This term is not defined in any of the documents before the Court, nor does Ms. Whiting define that term in her affidavit as inclusive of the ODS, the electronic file, or Exhibit 1 to the Bill of Sale from Citibank to Pilot.

Unifund argues that the terms "accounts" and "receivables" are interchangeable according to legal authority. Pltf's Opp. at 3 citing *Black's Law Dictionary*. Even if that were true as a matter of law, it is of no help to Unifund because the assignment to Unifund does not specify which "Receivables" or which "Accounts" have been conveyed. Compare Whiting Aff. Ex. A (conveying "the Accounts described in Exhiibt 1 and the final electronic file" from Citibank to Pilot) with Whiting Aff. Ex. E (assigning "Receivables" to Unifund). Ms. Whiting's affidavit establishes that Pilot bought a

---

[3] *Unifund v. Zimmer*, 2016 VT 33 ¶16 (citing Peter A. Holland, <u>The One Hundred Billion Dollar Problem in Small Claims Court: Robo-Signing and Lack of Proof in Debt Buyer Cases</u>, 6 J. Bus. & Tech. L. 259, 286 (2011)); *Chase Bank USA, N.A. v. Cardello*, 896 N.Y.S.2d 856 (N.Y. Civ. Ct., March 4, 2010) ('[O]n a regular basis this court encounters defendants being sued on the same debt by more than one creditor alleging they are the assignee of the original credit card obligation. Often these consumers have already entered into stipulations to pay off the outstanding balance due the credit card issuer and find themselves filing an order to show cause to vacate a default judgment from an unknown debt purchaser for the same obligation.'); *Webb v. Midland Credit Mgmt. Inc.*, No. 11C5111, 2012 WL 2022013, at *5 n. 8 (N.D. Ill. May 31, 2012); *McCammon v. Bibler, Newman & Reynolds, P.A.*, 493 F. Supp.2d 1166, 1170 (D. Kan. 2007) (finding that debt collector obtained judgment despite knowing that debtor had paid original creditor); *Grimsley v. Messerli & Kramer, P.A.*, No. 08-548 (JRT/RLE), 2009 WL 928319, at *1 (D. Minn. March 31, 2009) (finding collections firm attempted to collect on already-paid debt); *Sweatt v. Sunkidd Venture, Inc.*, No. C05-5406FDB, 2006 WL 1418652, at *1 (W.D. Wash. May 18, 2006); *Hooper v. Capital Credit & Collection Services, Inc.*, No. CV 03-793-JE, 2004 WL 825619 (D. Or. Apr. 13, 2004); *McHugh v. Check Investors, Inc.*, No. Civ.A. 5:02CV00106, 2003 WL 21283288, at *2 (W.D. Va. May 21, 2003);

[4] The Court has not held that all conveyances purporting to bifurcate title must specify who holds legal title and who holds equitable title. Rather the Court merely holds that drafters must not create a conflict between the granting and reservation clauses in an assignment, rendering the Court, debtor, and anyone else tasked with deciphering their intent unable to determine who owns what portions of a debt.

portfolio of "accounts" from Citibank, which included Mr. Cobb's debt. This was memorialized on the "electronic file," which was Exhibit 1 to the Bill of Sale from Citibank to Pilot. Whiting Aff. ¶10. Yet there is nothing in the Assignment from DAP to Unifund or Whiting's Affidavit, or anywhere else in the documents produced for the Court on summary judgment to establish that the "Receivables" (or "Accounts") referred to in the DAP-to-Unifund Assignment were identical to the accounts listed on Exhibit 1, the Electronic File, or the ODS, referenced in the Bill of Sale and Assignment from Citibank to Pilot.[5]

Fundamental to its burden of persuasion at trial, Plaintiff must establish admissible, credible evidence supporting a chain of ownership which demonstrates its right to sue on the debt. See Reporter's Notes to 2012 Amendment to V.R.C.P. 56(c)(1)(B) and 56(c)(2) (Absence of admissible evidence to prove a necessary fact can be the basis for summary judgment). **Because there is nothing in the record to signify that Defendant's debt was part of the "Receivables" purportedly conveyed by DAP to Unifund, the Court holds that Unifund has failed to demonstrate necessary facts sufficient to prove ownership of Defendant's debt, and therefore lacks standing to sue him in this collections case.**

### c. There is a Contested Issue of Fact Over Whether the Conveyances Would Survive a Hearsay Objection at Trial.

The parties argue at length over whether Ms. Whiting's affidavit establishes the minimum foundation necessary to admit the evidence of the conveyances, and underlying transactions, as business records under that exception to the hearsay rule. V.R.E. 803(6). To survive a hearsay objection under 803(6) a document must (1) Be made at or near the time of any event or act which it is offered to prove; (2) Be made by a person with knowledge or be based on information provided by a person with knowledge; (3) Be kept in the course of regularly conducted business activity, and; (4) Not be accompanied by information as to the source or method of preparation that indicate a lack of trustworthiness.

Ms. Whiting's affidavit never describes in detail whether the ODS and the instruments purported to convey Mr. Cobb's debt were created "by a person with personal knowledge of", or from information transmitted by a person with knowledge of Mr. Cobb's debt and of the conveyances. See, e.g., Whiting Aff. at ¶18 (Ms. Whiting's knowledge of Mr. Cobb's account is derived from reviewing records only); ¶¶6, 8, 9, 10, 12, 13, 15, 16, 17, 19, 20, 21, 22, 23 (describing what Citibank, Pilot, DAP, and Unifund did, or describing actions done using passive voice, without identifying the person with knowledge of the information contained in the conveyances); ¶¶24-26 (in conclusory fashion, asserting that the attachments to her affidavit satisfy the business records exception to the hearsay prohibition). The Court has serious concerns that, just as was the case in *Zimmer*, these documents would be inadmissible at trial under Rule 803(6) based upon Plaintiff's record custodian's proposed testimony submitted in her affidavit. Nevertheless, recognizing that foundational issues as to admissibility are typically reserved for trial, the Court concludes that issues regarding the business records exception present contested issues of fact inappropriate for determination as a matter of summary judgment.

---

[5] The same lack of identification of Defendant's debt also afflicts the assignment from Pilot to DAP, since Attachment A is not part of the summary judgment record, nor has Plaintiff established through its affiants or anywhere else in the record that Attachment A specifies Defendant's debt as among the batch of accounts covered by the assignment.

# ORDER

**WHEREFORE**, it is hereby **ORDERED**: Because the assignment from DAP to Unifund is uncertain in its material terms the Court holds that it is void. Further, because Plaintiff has not provided admissible evidence that the "Receivables" conveyed by DAP to Unifund included Mr. Cobb's debt, the Court holds that Unifund has failed to establish that it can prove ownership. Therefore, Unifund lacks standing to sue Mr. Cobb to collect on his debt. The Court hereby **GRANTS** Defendant's motion for summary judgment. The reasoning underlying the granting of Defendant's motion for summary judgment as to Plaintiff's claim for collection of amounts due on a credit card contract necessarily compel the Court to **DENY** Plaintiff's cross-motion for summary judgment. For the same reasons recognized in *Zimmer,* the Court **DENIES** Plaintiff's motion for summary judgment based on unjust enrichment, since proof of that claim also encompasses proof of a chain of assignment from Citibank, which Plaintiff has failed to establish.

Signed electronically at Brattleboro, VT this 9th day of April, 2017

_____
John P. Wesley, Superior Judge (ret.)
Specially Assigned